UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ALEXIA ("ANTHONY") DASKALAKIS,

        Plaintiff,

  - against -

FOREVER 21, INC.,

        Defendant.
------------------------------------------------------------X

**MEMORANDUM AND ORDER**
15-CV-1768 (RRM) (SMG)

ROSLYNN R. MAUSKOPF, United States District Judge.

      Plaintiff Alexia Daskalakis, a transgender woman, alleges that defendant Forever 21, Inc. ("Forever 21")[1] discriminated against her for her gender expression during her transition process, retaliated against her for complaining of the discrimination, and terminated her employment as the culmination of this discriminatory and retaliatory treatment. Daskalakis seeks monetary damages and declaratory injunctive relief under Title VII of the Civil Rights Act of 1964 ("Title VII"),[2] the New York State Human Rights Law ("NYSHRL") § 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL") § 8-100 *et seq.* Currently pending before the Court is Forever 21's motion to compel arbitration. (Mot. to Compel Arbitration and Stay this Action ("Motion to Compel") (Doc. No. 26).) For the reasons set forth below, the motion to compel is GRANTED.

---

[1] Forever 21 has advised the Court that its correct name is Forever 21 Retail, Inc., rather than Forever 21, Inc., as it is named in the amended complaint and on the docket. (Mem. in Supp. Mot. to Compel (Doc. No. 27).) Forever 21 has provided no support for this statement and the arbitration agreement signed by Daskalakis specifies Forever 21, Inc. and its subsidiaries, but does not specifically name Forever 21 Retail, Inc. (Agreement to Arbitrate (Doc. 29-1).) As Forever 21, Inc. and Forever 21 Retail, Inc. appear to be separate legal entities, the Court will not substitute one for the other without further information from the parties. (*See* Chang Decl. (Doc. No. 29) at ¶ 1 ("I am currently a Human Resources Business Partner of Forever 21, Inc., a parent corporation of Forever 21 Retail, Inc.").)

[2] Daskalakis received a Notice of Right to Sue from the EEOC on June 9, 2015. (Am. Compl. (Doc. No. 23) at ¶ 6.)

## BACKGROUND

Daskalakis was employed by Forever 21 from May 2011 until January 2015 at Forever 21's King Plaza, New York store. (Am. Compl. (Doc No. 23) at ¶ 8.) She began her employment as a sales associate and was shortly promoted to visual merchandiser. (*Id.* at ¶ 17.) Forever 21 requires new employees to sign a contractual agreement to resolve employment disputes, including claims of employment discrimination, through arbitration (the "Agreement to Arbitrate" or "Agreement"). (Chang Decl. at ¶ 3; Agreement to Arbitrate at 2 (ECF pagination).) The Agreement to Arbitrate states in pertinent part:

> The Company[3] and Employee mutually agree that any dispute or controversy arising out of or in any way related to any "Dispute," as defined herein, shall be resolved exclusively by final and binding arbitration. Such arbitration shall be held in the County in which Employee works, or a location mutually agreed upon by both parties.
>
> For purposes of this Agreement, the term "Disputes" means and includes any claim or action arising out of or in any way related to the hire employment, remuneration, separation or termination of Employee. The potential Disputes which the parties agree to arbitrate, pursuant to this Agreement, include but are not limited to . . . claims for unlawful discrimination, retaliation or harassment . . . and Disputes arising out of or relating to the termination of the employment relationship between the parties, whether based on common law or statute, regulation, or ordinance.

(Agreement to Arbitrate at 2 (ECF pagination).)

Daskalakis signed the Agreement to Arbitrate on May 11, 2011, just below the following acknowledgment:

> I AM ENTERING INTO THIS AGREEMENT VOLUNTARILY.
>
> I ACKNOWLEDGE THAT I HAVE CAREFULLY READ THIS AGREEMENT AND UNDERSTAND ITS TERMS, THAT ALL UNDERSTANDINGS AND AGREEMENTS BETWEEN THE COMPANY AND ME RELATING TO THE SUJBECTS COVERED IN THE AGREEMENT ARE CONTAINED IN IT,

---

[3] "Company" is defined in the Agreement to Arbitrate as "Forever 21, Inc. and its subsidiary and affiliated companies, and each of their officers, directors, agents, benefit plans, insurers, successors and assigns." (Agreement to Arbitrate at 2 (ECF pagination).)

> AND I AM NOT RELYING ON ANY PROMISE OR REPRESENTATIONS
> BY THE COMPANY OTHER THAN CONTAINED IN THE AGREEMENT
> ITSELF.
>
> I FURTHER ACKNOWLEDGE THAT I HAVE BEEN GIVEN THE
> OPPORTUNITY TO CONSULT WITH MY PRIVATE LEGAL COUNSEL OR
> OTHER ADVISOR BEFORE SIGNING THIS 2 PAGE AGREEMENT, AND
> HAVE EITHER DONE SO OR VOLUNTARILY DECIDED TO DECLINE
> THE OPPORTUNITY TO DO SO.

(*Id.* at 3 (ECF pagination).) Daskalakis presented as male when she began working at Forever 21 in 2011 and began transitioning to present as a woman in or around January 2014. (Am. Compl. at ¶ 23.) She continued to work at Forever 21 until January 2015 when she was fired. (*Id.* at ¶ 80.) She alleges that her "termination was the culmination of the discriminatory treatment she was subjected to on account of transitioning to become a woman and the retaliatory treatment she was subjected to after she complained about discrimination." (*Id.* at ¶ 81.)

On July 15, 2015, Daskalakis filed a complaint with this Court, alleging that Forever 21 discriminated against her on the basis of her gender, gender expression, gender identity and/or failure to conform to gender stereotypes in violation of the NYSHRL and NYCHRL. (Compl. (Doc. No. 1) at ¶ 4.) Daskalakis filed an Amended Complaint on August 17, 2015, adding claims under Title VII. (Am. Compl. at ¶ 4.)

Forever 21 moved to compel arbitration and stay this case on September 4, 2015. (Mot. to Compel.) Daskalakis opposes the motion. (Mem. in Opp'n (Doc. No. 30).)

## STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") embodies the "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 364 (2d Cir. 2003) ("While the FAA expresses a strong federal policy in favor of arbitration, the purpose of Congress in enacting the FAA 'was to make arbitration agreements as enforceable as other

contracts, *but not more so*.'" (quoting *Opals on Ice Lingerie v. Body Lines Inc.*, 320 F.3d 362, 369 (2d Cir. 2003))). "The overarching purpose of the FAA, evident in the text of §§ 2, 3 and 4, is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). The Court must evaluate a motion to compel arbitration pursuant to the FAA, 9 U.S.C. § 4, under a standard similar to the standard for a summary judgment motion. *Bensadoun v. Jobe-Riat,* 316 F.3d 171, 175 (2d Cir. 2003) ("[T]he summary judgment standard is appropriate in cases where the District Court is required to determine arbitrability."). Where a motion to compel arbitration "is opposed on the ground that no agreement to arbitrate has been made between the parties, a district court should give the opposing party the benefit of all reasonable doubts and inferences that may arise." *Mazza Consulting Group, Inc. v. Canam Steel Corp.*, No. 08-CV-38 (NGG) 2008 WL 1809313, at *1 (E.D.N.Y. Apr. 21, 2008).

In determining whether a claim should be arbitrated, the Court must determine (1) "whether the parties agreed to arbitrate"; (2) "the scope of that agreement"; (3) "if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable"; and (4) "if the court concludes that some, but not all, of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration." *See JLM Indus., Inc. v. Stolt–Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004) (quoting *Oldroyd v. Elmira Sav. Bank. FSB*, 134 F.3d 72, 75–76 (2d Cir. 1998)). Where a valid arbitration agreement exists, the FAA requires that federal statutory claims arising from an employment relationship, including Title VII claims, be subject to mandatory arbitration. *See, e.g.*, *Parisi v. Goldman, Sachs & Co.*, 710 F.3d 483, 487–88 (2d Cir. 2013) (holding that the district court erred in denying motion to compel arbitration of Title

4

VII claim); *Desiderio v. Nat. Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 206 (2d Cir. 1999) (holding Title VII claims subject to mandatory arbitration).

The Court's first task therefore is determining whether an enforceable arbitration agreement exists. "While there exists a strong federal policy favoring arbitration agreements and resolving 'any doubts concerning the scope of arbitrable issues . . . in favor of arbitration,' a court first must conclude that the parties intended to arbitrate in the first instance before the scope of arbitration may be defined." *Monisoff v. Am. Eagle Invs., Inc.*, No. 96-CV-7798, 1996 WL 708598, at *1 (2d Cir. Dec. 9, 1996) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25). "Only when an agreement to arbitrate is found to exist does a court proceed to decide whether a given dispute falls within the scope of that agreement. These two inquiries are separate and independent." *Spear, Leeds & Kellogg v. Cent. Life Assurance Co.*, 85 F.3d 21, 25 (2d Cir. 1996).

"The party seeking to compel arbitration has the burden of demonstrating by a preponderance of the evidence the existence of an agreement to arbitrate." *Tellium, Inc. v. Corning Inc.*, No. 03-CV-8487 (NRB), 2004 WL 307238, at *5 (S.D.N.Y. Feb.13, 2004). "Because an agreement to arbitrate is a creature of contract . . . the ultimate question of whether the parties agreed to arbitrate is determined by state law." *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.").

## ANALYSIS

### I.  Validity of the Arbitration Agreement

Here, Daskalakis does not dispute that she signed the Agreement to Arbitrate, that Forever 21 has produced the complete signed Agreement, or that the Agreement encompasses the claims at issue.  (Mem. in Opp'n at 2, 9–10.)  Rather, Daskalakis argues that the Agreement to Arbitrate is unenforceable because it is missing essential terms.  (*Id.* at 2, 9.)  There is no dispute in this case that New York law governs the question of whether the parties reached a valid agreement to arbitrate.

In New York, a valid contract exists only if there is a meeting of the minds of the parties as to all essential terms.  *Schurr v. Austin Galleries of Ill.*, 719 F.2d 571, 576 (2d Cir. 1983); *see also Dreyfuss v. Etelecare Global Solutions-U.S. Inc.*, 349 F. App'x 551, 555 (2d Cir. 2009) (summary order) ("[U]nder New York law a party seeking to enforce a contract must prove not only the existence of the contract, but also its terms.").  The contract must satisfy the "doctrine of definiteness" which "[i]n short . . . means that a court cannot enforce a contract unless it is able to determine what in fact the parties have agreed to."  *166 Mamaroneck Ave. Corp. v. 151 E. Post Rd. Corp.*, 78 N.Y.2d 88, 91 (1991).  "The law is clear that although the parties may intend to enter into a contract, if essential terms are omitted from their agreement, or if some of the terms included are too indefinite, no legally enforceable contract will result."  *V'Soske v. Barwick*, 404 F.2d 495, 500 (2d Cir. 1968).  The Second Circuit has stated that under New York law, a term is "essential" if it "seriously affects the rights and obligations of the parties." *Ginsberg Mach. Co. v. J. & H. Label Processing Corp.*, 341 F.2d 825, 828 (2d Cir. 1965).  Although the omission of essential terms, or inclusion of terms that are too "indefinite," will render a contract unenforceable, "the terms contemplated by the agreement need not be fixed

with complete and perfect certainty for a contract to have legal efficacy." *V'Soske*, 404 F.2d at 500.

Daskalakis contests the validity of the Agreement to Arbitrate under the definiteness doctrine on the grounds that the Agreement does not identify the arbitral forum or location, the identity of or method for selecting an arbitrator, the arbitration procedures, or the choice of law. (Mem. in Opp'n at 2.) In cases where the identity or method for selecting an arbitrator are not specified, the parties can ask the Court to appoint an arbitrator if they cannot agree on one themselves. *Badinelli v. Tuxedo Club*, No. 15-CV-6273 (VB), 2016 WL 1703413, at *4 n.2 (S.D.N.Y. Apr. 25, 2016) (where an employment agreement does not specify who shall be the arbitrator of disputes, the parties may agree or may make an application to have the Court appoint an arbitrator). Once an arbitrator is selected by the parties or the Court, the arbitrator can determine the procedural aspects of arbitration, *id.* at *4, and these aspects are not "essential terms" to an arbitration agreement, the lack of which would render the agreement unenforceable. *See, e.g.*, *Gerena v. Neurological Surgery, P.C.*, No. 15-CV-4634 (GRB), 2016 WL 3647782, at *4 (E.D.N.Y. June 9, 2016), *report and recommendation adopted*, No. 15-CV-4634 (JMA), 2016 WL 3647866 (E.D.N.Y. July 1, 2016) ("the method for selecting an arbitrator, the arbitral forum, the procedural law to be followed, the substantive law to be applied, and the location where the arbitration should be held" are not essential terms); *Wework Cos., Inc. v. Zoumer*, No. 16-CV-457 (PKC), 2016 WL 1337280, at *5 (S.D.N.Y. Apr. 5, 2016) ("The lack of specific terms governing the arbitration's procedure does not invalidate the agreement, considering that the FAA provides an objective method to fill gaps in arbitration agreements."); *Hudson Specialty Ins. Co. v. N.J. Transit Corp.*, No. 15-CV-89 (ER), 2015 WL 3542548, at * 7 (S.D.N.Y. June 5, 2015) (rejecting the argument that arbitration provision was unenforceable under the definiteness

7

doctrine because it was missing terms as to the rules that would govern the arbitration, whether the arbitration would be binding on the parties, and the location or forum of the arbitration); *Al Maya Trading Establishment v. Glob. Exp. Mktg. Co.*, No. 14-CV-275 (PAE), 2014 WL 3507427, at *3 n.2 (S.D.N.Y. July 15, 2014) (stating that the venue of the arbitration and arbitral body are not essential terms).

Daskalakis's reliance on *Dreyfuss*, 349 F. App'x at 555, is misplaced. Although the Second Circuit in *Dreyfuss* found that the parties' expressed intention to arbitrate was not enough to render the agreement to arbitrate enforceable where "provisions setting forth specific arbitration procedures [were] missing," the court's decision in that case turned on the fact that the defendant had produced only a partial copy of the signed arbitration agreement and not the complete agreement.[4] 349 F. App'x at 554 (internal quotation marks omitted). The court found that the defendant could not "meet its burden of showing that the meeting of the minds necessary for the existence of an enforceable contract took place" and that the "suggestion that the Court simply enforce the two-page fragment as though it were the full document runs afoul of basic contract principles." *Id.* (internal quotation marks omitted).

Here, there is no dispute that the entire agreement was produced. *See Badinelli*, 2016 WL 1703413, at *4 (distinguishing *Dreyfuss* because the parties did not dispute that the entire agreement was produced); *Hudson Specialty Ins. Co.*, 2015 WL 3542548, *7 (noting that the court in *Dreyfuss* was "unable to determine what in fact the parties have agreed to") (internal quotation marks omitted)); *Hojnowski v. Buffalo Bills, Inc.*, 995 F. Supp. 2d 232, 237 (W.D.N.Y.

---

[4] The court explained that "[t]he last page [of the copy of the agreement produced by defendant] is signed by [plaintiff], but the text on the preceding page stops in the middle of a sentence which is not completed on the last page. And . . . [defendant] acknowledges that it could not locate a complete copy of the arbitration agreement which [plaintiff] signed." *Dreyfuss*, 349 F. App'x at 552. The incomplete sentence at the end of the first page included, "[e]xcept as otherwise provided in this Agreement" and because the subsequent pages of the agreement were not produced, it was impossible to determine what was "otherwise provided" in the agreement. *Id.*

2014) (distinguishing *Dreyfuss* because "there is no dispute that the complete agreement has been produced and provided to this Court"). The parties in this case do not dispute what the agreement says in its entirety, and, as discussed above, the terms not included in the agreement can be determined by the arbitrator.

Daskalakis's analogy to *Opals,* 320 F.3d at 371–72, is similarly unavailing. In *Opals*, the parties faxed documents back and forth containing arbitration clauses, but never signed a single document with a consistent set of arbitration procedures specified. 320 F.3d at 365–66. Instead, each party signed different documents, one party's specifying that the arbitration would take place in New York and be governed by New York law, while the other's specified that the arbitration would occur in California and be governed by California law. *Id.* at 372. The court in *Opals* found that the parties were not bound to arbitrate because there was no "meeting of the minds as to the material terms of any agreement" and no valid contract was formed. *Id.* at 371–72. Here, unlike in *Opals*, the parties agree on, and have produced, the terms of the agreement.

For the reasons set forth above, the Agreement to Arbitrate is valid and enforceable. As acknowledged by Daskalakis, it encompasses the claims at issue. (Mem. in Opp'n at 2 ("The Forever 21 Arbitration Agreement provides that all disputes relating to Ms. Daskalakis' employment will be subject to arbitration, including claims for discrimination like those asserted by Ms. Daskalakis in this action.").) And Daskalakis's Title VII claims are federal statutory claims that congress intended to be arbitrable. *See, e.g.*, *Parisi*, 710 F.3d at 487–88; *Desiderio*, 191 F.3d at 206. Thus, the parties must arbitrate Daskalakis's claims.

## II. Staying the Case

Forever 21 has requested that this case be stayed pending arbitration. (Mot. to Compel.) It is well settled in this Circuit that "the text, structure, and underlying policy of the FAA

9

mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015). Here, all of Daskalakis's claims against Forever 21 are referred to arbitration. Therefore, this Court stays this action pending arbitration.

The parties shall confer and submit a status report within thirty (30) days of this Memorandum and Order that states whether the parties are able to agree upon an arbitrator. If the parties are unable to reach agreement, each party shall include a list of five (5) potential arbitrators in order of preference, with each proposed individual's qualifications. The Court will then select an arbitrator and so advise the parties.

## CONCLUSION

Forever 21's motion to compel arbitration and stay this action is GRANTED and the parties are ordered to arbitrate the case pursuant to the terms of the Arbitration Agreement and consistent with this Memorandum and Order.

The Clerk of Court is respectfully requested to administratively close this case without prejudice to any party's right to reopen and/or lift the stay, if necessary, upon letter request filed with the Court within twenty-one (21) days of the disposition of the arbitration, or any event requiring the proceedings in this Court to resume.

SO ORDERED.

*Roslynn R. Mauskopf*

Dated: Brooklyn, New York
      August 25, 2016

ROSLYNN R. MAUSKOPF
United States District Judge